Quincy & al. v. Tilton.

QUINCY & AL. vs. TILTON.

*Where parties agree to rescind a sale once made and perfected without fraud, the same formalities of delivery &c. are necessary to revest the property in the original vendor, which were necessary to pass it from him to the vendee.*

THIS was a replevin, against a deputy sheriff, for 101 boxes of soap, which he had attached as the property of *Minchin & Willis;* and a trial was had before the Chief Justice upon the question of property in the debtors.

It appeared that the plaintiffs, on the 10th of *August* 1826, contracted with *Minchin & Willis* to exchange a quantity of wine, for a quantity of the plaintiffs' soap, of which the parcel replevied was a part. The wine was *Madeira* wine, imported by *Minchin & Willis,* and was in the hands of the custom house officer; but being of a bad quality, it was marked by the officer as *Fayal* wine, and paid duty as such. Before the bargain was concluded, one of the plaintiffs tasted the wine, and observed that it was as good as the soap. Afterwards, the plaintiffs being dissatisfied because the wine was entered as *Fayal* wine, although it had been represented to them as *Madeira,* and they understood it to be entitled to debenture as such, the parties submitted the matter to referees; who decided that as the wine had not been received by the plaintiffs, but was still in the custom house stores, it should remain the property of *Minchin & Willis,* and that the soap should be returned or paid for, at the market price. This decision was made in the afternoon of *Aug.* 17, and was agreed to, at the time, by both parties. No fraud was imputed, on either side. In the night following, the soap, being still in the possession of *Minchin & Willis,* was attached by the defendant. On the next day the plaintiffs commenced this action; and not being able to find all the boxes, they brought an action of *assumpsit* against *Minchin & Willis*

for the value of the whole quantity of the soap, as sold to them; which last action was still pending in this court.

Upon this evidence the jury returned a verdict for the plaintiffs; which the defendant moved the court to set aside, as being against law and evidence.

*Longfellow,* for the defendant, argued that the contract was not rescinded. There was no fraud or concealment, to vitiate it; and it was not in the power of the referees to set it aside. Nor has it been vacated by the parties themselves. Their assent to the award was at most but an agreement that the soap should be returned or paid for, as they might agree; but they never did agree which; and the plaintiffs made their election to abide by the contract of sale, by sueing for the price. This was an affirmance of the whole contract.

If *Minchin & Willis* had power to rescind the contract, they could not do so, under the circumstances of this case. An insolvent cannot rescind a sale after the goods are in his possession, and the rights of other creditors have attached. 2. *Kent's Com.* 404. 6. *D. & E.* 80. 3. *Bos. & Pul.* 119. But they have not attempted it; and if they had, it must have been rescinded *in toto,* and the property delivered, as re-sold, or all is void.

*Fessenden* and *Deblois,* on the other side, said that the whole inducement to the contract was the benefit of the debentures as on *Madeira* wine, of which the plaintiffs had been deprived by the misconduct of the vendors in entering it as *Fayal* wine. Its legal character was then changed, and the plaintiffs had therefore a perfect right to rescind the contract. The wine being in the government stores, and not in the actual custody of either party, the possession, in law, followed the right; and the acceptance of the award by both parties was a perfect rescinding of the contract. *Slate v. Field* 5. *D. & E.* 511. *Atkins v. Barwick* 1. *Stra.* 165.

The award being in the alternative, to return the soap or pay for it, *Minchin & Willis* elected the former, by not complying with the latter. For in such case the election belongs to the debtor, or vendee, and it must be made immediately, or it is lost. 1. *Dane's Abr.* 98. *McNitt v. Clark* 7. *Johns.* 465. *Thompson v. Ketcham* 8. *Johns.* 189. *Doug.* 15.

Quincy & al. *v.* Tilton.

And the rescinding was total. The plaintiffs replevied all they could find, and brought *assumpsit* for the residue. It might have been trover, for the whole; but they waived the tort and charged the party in contract, for what they could not otherwise obtain; which they well might do.

MELLEN, C. J. delivered the opinion of the Court.

The statement of a few general principles and the application of them to the case before us, we apprehend will conduct us directly to a satisfactory result. When a sale or exchange of articles is legally rescinded on account of fraud in one of the parties, the whole thereby becomes nullified *ab initio;* and, of course, the property sold or exchanged is considered as having never been changed, in respect to the parties themselves, or their creditors. This principle is not contested. On the contrary when the sale or exchange is fairly and honestly made and perfected by delivery, the property is completely changed in the articles which are the subject of the sale or exchange; and if, after this, the parties agree to give up the bargain, as it is often expressed, and place things as they stood before it was made, this object can only be effected by what, in legal contemplation, amounts to a re-sale or re-exchange; and whatever was necessary to constitute the original sale or exchange a legal transfer of the property from one of the parties to the other, is equally necessary to constitute a legal re-sale or re-exchange. The legal requisites of a perfect sale or exchange of personal property was a subject of critical examination in the case of *Lanfear v. Sumner* 17. *Mass.* 100; in which principles and authorities were carefully examined by Mr. Justice *Jackson.* He observes, in giving the opinion of the court, that the general rule is perfectly settled and established, that " the delivery of possession is necessary in a conveyance of personal chattels, as against every one but the vendor. In that case certain goods were sold, but before they came to the possession of the vendee, they were attached as the property of the vendor; and the creditor who was considered as a purchaser, by the judgment of the court, was considered as entitled to hold the goods. That case was similar to this in many respects.

Quincy & al. v. Tilton.

Let us now apply these principles to the present case. The report states that there was no fraud in the contract of exchange, and there was an actual delivery of the soap to *Minchin & Willis*, and a constructive possession of the wine by the plaintiffs; and there was therefore, by the exchange, a transfer of the property of the soap to *Minchin & Willis*. In this posture of affairs, for the reasons mentioned in the report, there was some dissatisfaction on the part of the plaintiffs, which led to the submission and the award; and this award was agreed to by the parties. We must construe its effect upon legal principles. The award, though agreed to by the parties, did not, in law, amount to a rescinding of the original contract, but only to an agreement to make a re-exchange. But if it amounted to a re-exchange, it was never perfected by a delivery of the soap to the plaintiffs, and of course, it did not re-transfer the property of it to them. We do not perceive that the cause stands on a better or different ground in respect to the plaintiffs, in consequence of that part of the award which gave an election to *Minchin & Willis* to return the soap or pay for it at the market price. By returning it before any attachment, they would have perfected the plaintiffs' title; but they did not return it; and by omitting so to do, as they immediately should have done, they elected to consider themselves as purchasers of it, and as such to pay for it at the market price. The attaching creditors found the soap in the possession of *Minchin & Willis*, and were strangers to the transactions between them and the plaintiffs, and had a good right to attach the soap to secure themselves.

Some proceedings on the part of the plaintiffs, in sueing for the price of the soap, in their action against *Minchin & Willis*, on the same day on which the present action was commenced, have been relied on as confessions of the Messrs. *Quincy*, that they considered the soap as belonging to *Minchin & Willis*. It was certainly competent proof for the jury to examine, and is in aid of the construction we have given; but we do not rely particularly on this circumstance; because, for the other reasons which have been stated, we are all of opinion that the verdict is against evidence, on the law applicable to the case.

*Verdict set aside and a new trial granted.*